May it please the Court, good morning. My name is John Gorman, I'm the Federal Public Defender, and I'm here representing Mr. Rios. Just a brief two housekeeping issues before we actually get started. I'm not going to present any argument today regarding the second issue in the appeal regarding whether or not Mr. Rios deserved the four-level enhancement for felony for possessing the gun in connection with another felony under the sentencing guidelines, 2K2.1B5. I'll rest on the papers that I have submitted. So you're not acquiescing in that, you're just not going to argue it orally? Exactly. Also I'd like to reserve two minutes for rebuttal. You certainly may do so. You have the clock in front of you, just watch it count. Thank you, Your Honor. I'm going to present the person's argument that the District Court erred when it failed to grant Mr. Rios' motion to suppress. I'm going to talk about three issues. Initially I wanted to talk about the issue that the courts directed the parties to talk about, that is the applicability. What does that Guam statute fit in all of this, 80-80? Yes, Your Honor. That's the first issue I'll talk about. I would argue that it doesn't fit, Your Honor. There has been some confusion, which I could explain later if we really wanted to get into it, but I would argue that it has no effect because it's important to remember that Guam is an unincorporated territory whose status is governed by the Organic Act of 1950. This court has used a variety of terms to describe Guam's status. It has called Guam an instrumentality of the federal government. Guam has been called by this court a creature of the federal government. It's also been said that Guam marches squarely to the beat of a federal drummer, and that's again the language of this court. What does that have to do with 80-80? I would argue that, unlike if you look at Sampson and Griffith, on those, really the Supreme Court dealt with whether the California, a sovereign, could enact a statute in this regard. In this case, Guam is not a sovereign. Guam is not at all similar to California. So you're arguing that not only 80-80, but 80-62 are of no moment. They don't mean anything. Yes, Your Honor. What are you saying, Mr. Gorman, that those statutes have absolutely no meaning? Not that they have no meaning. The legislature is just wasting its time? No, Your Honor. Not that they have no meaning, but they certainly aren't afforded the respect that a California state statute. When you read Sampson, they get great respect to the system that has been developed by California. First of all, if Congress has enacted that statute, you agree it would be valid, right? I agree that Congress had. Now, through the Organic Act, hasn't Congress delegated that power to the Guam legislature? I would disagree. To enact local laws there? No, because I would argue that Guam is, and this court has held, that Guam is really the equivalent of a federal department or an administrative agency. That's basically black-letter law. They can't develop rules regarding constitutional procedure. They have overstepped their bounds. This is not constitutional procedure per se. It's a parole procedure. Why can't it do that? This is like a federal agency that is now developing its own rules counter to what happens in federal court regularly. In federal court regularly, there must be reasonableness, and that's looked at by looking at the totality of the circumstances. I would argue that Guam, which is not a sovereign, as I said before, an equivalent of an administrative agency or a federal department, cannot, does not have that power to do that. It cannot go below the federal, what is the usual standard in federal court. How far does your argument go, counsel? Are you arguing that the entire Section 80, which deals with similar types of issues, is, to the degree that it touches on quasi-constitutional issues, is of no force or effect? No, I'm not prepared to go that far. But I am, I do say, our main argument is that this sub-department of a federal agency cannot issue rules that a parolee is subject to warrantless, suspicionless... Well, what about the Guam legislature, you know, giving the peace officers in Guam, Guam Police Department, the power of arrest? Is that invalid? Absolutely not. What's the difference? Because here, this is, this is an unfettered grant of discretion that the court... Is this the point? A court can impose, I would argue that a court could impose this condition. Certainly it's clear that a federal district court, who has the defendant in front of them, could impose, although I've never seen it in my ten years of federal practice, could impose such a condition. But the Guam probation, the Guam Parole Department, a sub-heading of a federal agency, they cannot impose this warrantless condition. Do you have any case law authority for your position? Well, I have the general case law authority as to where Guam's, this actually... Well, Samson doesn't help you, does it? I'm sorry? Samson doesn't help you, does it? Oh, yes, I believe it does. And I would direct the court's attention to the language in Samson. In Samson, the Supreme Court explicitly limited its... Can you give me a page? Oh. When you say direct me to the language in Samson? Yes. On the copy I have, unfortunately, it's page 11, but actually it's just before footnote 4. Okay. Footnote 4 follows the end of this sentence. That some states and the federal government require a level of individualized suspicion is of little relevance to our determination whether California's supervisory system is drawn to meet its needs and is reasonable, taking into account a parolee's substantially diminished expectation of privacy. That's a real stretch, don't you think, counsel? No, here, I'm sorry. Don't you think that's a real stretch to go from that language to, in effect, avoiding 80-80 of the Guam Code and essentially any right of a federally, congressionally constituted legislative body to enact laws for its own purposes and its own safety? No, because, again, I would go back to the fact that Guam is sometimes a confusing area, because when you look at Guam, it has all the, sometimes counterintuitive, it has all the trappings of a sovereign, of a state or a municipality. It elects leaders. It has an executive branch of governor and a whole executive department. It has a legislature. It has a Supreme Court. It has a judicial system. So it has all the trappings of a sovereign, but it is not. It is merely an instrumentality. Counsel, I think we understand your argument on that point. Why don't we just sort of bypass all of this and just look at the tip? Isn't the tip reasonable suspicion? I would argue no, especially when you look at what is actually contained in that tip. This is in the excerpt to records, and it is a very short section in the excerpt to records. It is only about four or five pages, starting at about page 51, going on to about page 64. Here are the basis. Here is what the facts that were adduced at the motion. That the defendant's mother and her husband went to the chief of the probation department approximately a week before the raid. Maybe about a week before is the exact language. They talked to Mr. Kanat, to the parole chief, for 10 minutes. They stated they were afraid. They stated there may be a weapon in the house, and this was from a child that lives with or is associated with Mr. Rios. So that is the only basis for reasonable suspicion here. And I would argue there is no evidence. Do you know how old the child is? I'm sorry? Do you know how old the child is? No. Now, there is an interesting thing. The plaintiff in her brief stated that the child was seven years old and stated that the child was the defendant's son. That was a statement made by the attorney for the government at sidebar. That was never adduced at trial or at the motion. That was simply a comment off the cuff, and that is not evidence in this case. Counsel, you're down to about a minute. I'm sorry? It's up to you to use it or not. Okay. So I would argue when you look at those factors, there's no information regarding the reliability of the informant. There's no information regarding any independent verification. We don't know anything about this child, his identity, his or her identity. Is this a relative, a neighbor? No evidence regarding the child's age. How did the child get this information? There's no description of the gun. We also have a staleness issue. This was over a week before the tip was acted on. And the testimony is clear. They said there may be a gun. And when you look at all those factors, I would argue this does not rise to reasonable suspicion. I have further argument regarding consent if the court would like to hear it on rebuttal. Well, you'll only have 20 seconds for rebuttal, counsel.  We'll hear from the government. Your Honor, the first issue I'd like to address is 80-80. To be candid, that was not included in the brief. Counsel, would you mind speaking closer to the mic? Thank you very much. Your Honor, 80-80 was not included in the brief.  Yes. Okay. Section 880? I mean 80-80? That's correct, Your Honor. In fact, Your Honor, I cited 80.62, which applies to probationers, as opposed to 80-80. I know, but it was raised by the order from the panel, right? It was, Your Honor. It was raised. Your Honor, Congress does give the government of the Territory of Guam the right to govern itself, create three branches of government. The Department of Corrections is part of the executive branch of the government. And so, Your Honor, we created the conditions of parole that are in this case. In the supplemental excerpts of records, we included a plea agreement, which includes the fact that the defendant agreed that he was subject to parole, if the court can look at SCR 4 under 80.70, which is in the 9 Guam Code annotated in 80-80. Specifically, Your Honor, 80-80 establishes the conditions of parole. It states that under 4, that the defendant or the parolee will permit... 80-80, though, doesn't have a provision as explicit as the California statute does. It is, Your Honor. What was that? That's correct, Your Honor. I believe they adopted the California... In other words, in Sampson, the Supreme Court seemed to rely on the fact that the statute explicitly provided for such a waiver, right? Or such a condition. That is correct. There is no such provision in 80-80. Your Honor, under 80-80, the defendant or the parolee, under 4, must permit the officer to visit him at reasonable times at his home or elsewhere. Right. Under 7, refrain from possessing firearms or dangerous weapons. And 11, satisfy any other condition reasonably related to his rehabilitation or to the public's safety and security. But there's no specific grant of authority to impose this, you know, I'll call it condition waiving the Fourth Amendment, right? Other than the... There's no such specific authority. But you really haven't answered Mr. Gorman's argument about, well, all this doesn't matter because the Guam legislature, as, you know, as just a mere instrumentality of the federal government, doesn't have the authority to go around waiving constitutional conditions or constitutional protections. That's true, Your Honor, because he did not raise that in his brief. However, Your Honor... Is that your only defense? No, Your Honor. However, the territory, through the act of, through the Organic Act, which is an act of Congress given to Guam as a plenary power, gives the government of Guam the right to govern itself, the right to create the three branches of government. And that includes the branches of the judiciary as well as the executive. And the executive branch is a creation, is a result of that. And we have the conditions of parole which were established in 9 DCA section 80.80. Well, what about looking at 8080 subsection 11, sort of the catch-all section? Wouldn't that cover it or not? Are you relying on that or not? The argument, as I understand it, is that there is no explicit search option listed among the conditions of parole either in 80.62 or 80.80. But would it be fair to conclude that either subsection 11 of 80.80 or subsection 13 of 80.62 would cover such a provision or not? What's the territory's argument here? Your Honor, the argument is that 11 does provide the conditions. Your Honor, I'd also like to note that… Yeah, but it doesn't say anything about searches. It's very generic, very general. It is very general, Your Honor, but the defendant also agreed that he was subject to probation and consented to these terms and conditions as contained in the SER. So, you're relying on the plea agreement then, or the plea agreement which provided that provision. But you still have to answer the defendant's argument, don't you, that that was ultra-virus, it was beyond the power? Your Honor, I agree, Your Honor, I do. And your answer is? Back to that Guam is a creation of Congress. We are not dual sovereigns. We are a sole sovereign. However, we were delegated this authority in the Organic Act in 1950, the authority to govern ourselves, the authority to create the branches of the government. We were also given in the Mink Amendment the first…the amendments to the Constitution, the Bill of Rights applied to Guam. And so, Your Honor, based on the authority from Congress to Guam, that it can be concluded that Guam statutes were reasonable. To hold otherwise would be to eviscerate any prosecution, would also completely wipe out any statutes that Guam has, and would certainly destroy Guam's ability to actually prosecute its cases. What about…which argument on the alternative ground that, in any event, this tip from the citizen was sufficient to provide, you know, the required reasonable suspicion? And Mr. Gorman's argument that no, it wasn't. Which response to his argument on the tip? Your Honor, the facts that came out of the suppression hearing were that the family members, the mother of the defendant as well as the mother's boyfriend, came to the probation officer at very early hours in the morning, before the parole officer was even opened up. The two people spoke to the parole officer and expressed that they had concerns. They mentioned that there was a custody issue, that a child had mentioned that there was a firearm…I'm sorry, a weapon in the home. They mentioned that they were concerned with his behavior. Given this totality of the circumstances, Chief Parole Officer Mike Cannata looked at that, weighed that in light of his knowledge and experience with the defendant, Rios, and he chose to go out there to the residence and conduct a search, pursuant to the conditions which the defendant expressly agreed to. We believe that this is reasonable suspicion, that it meets the standards of the Knights, because we have the reasonable suspicion, but we also have facts that the defendant was clearly and unequivocally aware of the search conditions that he was confronted with. Can I follow up on just that particular point? It's clear, is it not, Counsel, that a defendant can waive a constitutional right if it's a knowing waiver, right? Yes. Okay, in this case, this defendant signed a plea agreement, and he was represented by Counsel, right? That's correct. And this plea agreement almost tracks in the relevant portion, Section 8080. It says that the defendant shall permit parole and police officers to search his purse and residence and vehicles for firearms, alcohol, and illegal controlled substances at any time such a search is requested. He signed that, did he not? He did, Your Honor. And he agreed unequivocally with the court that he was knowingly signing and waiving any rights that he had under this document, right? Yes. So even if the territory of Guam does not have the ample powers that we've at least assumed that it did in this area, nonetheless, if the defendant knowingly waives a constitutional right, does that overcome an ultra-virus issue if, in fact, we get to that? Do you know what I mean by the ultra-virus? No, Your Honor. What I mean by that is if the legislature acted beyond its competence, if the legislature had no ability legally to enact 8080, let's assume arguendo that it didn't have that authority. Would the defendant nonetheless, having knowingly waived this right represented by Counsel before the court, nonetheless be bound by this waiver, be it constitutional or otherwise? We'd argue, Your Honor, that yes, he would be bound. Essentially, this is a waiver of his rights. However, whether the defendant consented or not is irrelevant because the defendant is a parolee. Parolee must accept the fact that parole exists. It's not a choice, unlike a plea agreement, which is a voluntary choice. We believe that the defendant expressly waived these rights, consented to this. He was advised that these are the conditions that he was placed on, parole. He was advised that... Thank you, Counsel. Your time has expired. Thank you. Counsel, you have a few seconds left. So I will have to be very quick. Absolutely, a defendant can waive his Fourth Amendment rights. This was not done colloquially, though. The plea agreement was a whole separate thing. When they argued about consent before, they were talking about the consent when he signed that parole declaration. And when you look at footnote four in Stevens' dissent in Sampson, he talks about, and he cites to LaFave, who is a very eminent and impartial observer, and he says what a manifest fiction it is that someone, when faced with the keys to the prison door, is going to... He has no right to not have a suspicion of search in prison, and now he doesn't have a right when he's out. There was no evidence in terms of the issue of consent at the motion to suppress. It is the government's burden to approve consent. Other than the signature of the defendant. But there's no... We still had to look at whether it was knowing and voluntary. There was absolutely no testimony. Did he read it? Was it read to him? What were the conditions? That is the burden of the government. They didn't even touch it. If the court is concerned about consent, there would have to be, I would argue, a remand as to the voluntariness issue. Thank you, counsel. Could I ask a question, though? Certainly. Did you raise in the trial court the issue or the contention that the consent wasn't voluntary? No, your honor. That is an issue. It's the burden on the government. They have to prove it. We are... Well, they only have to prove it if it becomes an issue. And if you didn't raise it, you waived it. I know. They don't have to prove that he's competent to sign unless there's some evidence of incompetence. I would have to review. I don't... I can't say for the record. I don't remember whether or not that was an issue in the initial motion. In any rate, you do agree that it was not raised in the trial court, this issue of, you know... Certainly, I would have to review my motion to suppress. Certainly, the district court talked about it in its decision. When you look at page 94 of the briefs, it talks about there was no evidence of coercion where the district court actually switched the burden. But I would argue that the issue has been presented and there's been no evidence. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument next in United States v. Cruz.
judges: O'scannlain, Tashima, Smith